UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DARIO SUAREZ SOTO,

Plaintiff,

v.

TODD BLANCHE[1],

Defendant.

Case No.  3:26-cv-01700-JSC

**ORDER RE: MOTION FOR PRELIMINARY  INJUNCTION**

Re: Dkt. No. 7

Plaintiff Dario Suarez Soto contends the government violated the Administrative Procedure Act (APA) when it rescinded, without notice, the Executive Office for Immigration Review's prior practice of expediting visas for individuals seeking non-law permanent resident (non-LPR) cancellation of removal when their qualifying relative was aging out (turning 21). (Dkt. No. 1[2])  The Court previously enjoined the rescission on a temporary basis as to Plaintiff only and now Plaintiff seeks a preliminary injunction pending resolution of his claims.  (Dkt. No. 7.)   Having considered the parties' submissions, including their supplemental submissions, and having had the benefit of oral argument on March 19, 2026, the Court DENIES the motion for preliminary injunction.  Because Plaintiff's claim arises out of his removal proceedings, this Court

---

[1] The Court substitutes Todd Blache, the acting Attorney General, as the proper defendant.  *See* Fed. R. Civ. Proc. 25(d).

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

lacks jurisdiction.

**BACKGROUND**

Plaintiff, who is originally from Mexico, has resided in the United States for over 30 years. (Dkt. No. 1 a ¶ 20.) He has two United States citizen children, the youngest of which, N-S-A-, turned 21 on March 2, 2026. (*Id*. at ¶¶ 20-21.) N-S-A- experiences significant mental health challenges, including Major Depressive Disorder, recurrent and moderate with anxious distress, and Post-Traumatic Stress Disorder (dissociative type). (*Id*. at ¶ 21; Dkt. No. 1 at 62.) Her treating physicians emphasize she is emotionally fragile, highly dependent on her father's presence for emotional regulation, and at risk of severe deterioration should her father be removed, including the recurrence of past suicidal thoughts. (Dkt. No. 2 at ¶ 2; Dkt. No. 1 at 73-74.)

Plaintiff is presently in removal proceedings before the San Francisco Immigration Court. (Dkt. No. 1 at ¶ 22.)  Plaintiff applied for non-LPR cancellation of removal, and his merits hearing occurred on January 25, 2023.  (*Id*.) At the hearing, Immigration Judge Levine indicated she intended to grant Plaintiff's application, but she was unable to do so immediately due to the statutory cap on the number of cancellation applications that could be granted at that time. (Dkt. No. 1, Ex. 8, Espinoza Decl. at ¶ 5 (ECF Page 77).)  Immigration Judge Levine instructed Plaintiff's counsel "to notify the Court six months prior to N-S-A-'s twenty-first birthday so that the decision could be advanced" and then issued an order designating the case as "on 42b reserved decision." (*Id*.)

Plaintiff alleges the Executive Office of Immigration Review (EOIR) has historically reserved 500 of the 4,000 yearly cancellation grants to use "in the case of detained individuals" and "individuals whose qualifying relative children may die or will soon turn 21" under what is known as "the expedite/age-out policy for cancellation cases."  (Dkt. No. 1 at ¶¶ 4, 7; Dkt. No. 1 at ECF 20, Crabtree Decl. at ¶ 7.) "Albeit unclear as there is no public information available" Plaintiff alleges an EOIR Director's Memorandum, PM 25-02, dated January 27, 2025 "directed" the recission of this policy. (Dkt. No. 1 at ¶ 9.)  This rescission was not accompanied by an opportunity for notice and comment and no findings regarding reliance interests were made. (*Id*. at ¶¶ 10, 28.)

On August 21, 2025, Plaintiff filed an unopposed "motion to Calendar Status Conference" as instructed by the immigration judge.  (Dkt. No. 1 ¶ 24.)  Two weeks later, Immigration Judge Levine issued an order denying the motion stating "The Court has requested early visa issuance from the agency.  The ultimate decision lies with the agency.  There are no further actions the court can take." (*Id*.; Dkt. No. 1 at ECF 57.)  Plaintiff alleges Immigration Judge Levine was fired the same day.  (Dkt. No. 1 ¶ 24, n.3.)

On February 10, 2026—nearly a month before his daughter would turn 21—Plaintiff filed a "Motion to Advance Grant of 42b."  (*Id*. at ¶ 27; Dkt. No. 1 at ECF 59.)  The Department of Homeland Security did not oppose the motion. (Dkt. No. 1 at ¶ 27.)  On February 23, 2026, a newly-assigned immigration judge denied the motion stating "The Court cannot grant applications for cancellation of removal out of order.  To the extent there was previously an informal practice of doing so, such informal practice no longer exists." (*Id*.; Dkt. No. 1 at ECF 69.)

Plaintiff filed this Administrative Procedure Act (APA) action and accompanying application for a TRO at 11:32 p.m. on Thursday, February 26, 2026.  Plaintiff's daughter and qualifying relative was set to age out on Monday, March 2, 2026.  On February 27, the Court granted an ex parte TRO and issued an order to show cause (OSC) as to why a preliminary injunction should not issue, concluding Plaintiff had raised serious legal questions as to the merits of his claim the recission of the expedite/age-out policy violated the APA based on the allegation the recission was made without notice or comment and without "considering the acute reliance interests and consequences for the administration of justice, the vulnerable population affected, or the ongoing representations that will be disrupted." (Dkt. No. 7 at 3 (quoting *Am. Gateways v. U.S. Dep't of Just.*, 2025 WL 2029764, at *1 (D.D.C. July 21, 2025)).)

Plaintiff then filed with the immigration court an "Emergency Motion to Reconsider Motion to Advance Grant of 42B because the US District Court, Northern California Granted TRO." (Dkt. No. 9 at 6.)  The immigration judge denied the motion writing: "There is no practice of advancing cases out of order.  Respondent's application will be adjudicated when his number comes up." (*Id*.)  Upon receipt of the government's OSC response attaching the immigration judge's order, the Court ordered Plaintiff's reply to address whether this action is moot in light of

the immigration judge's denial and Plaintiff's child having turned 21 on March 2, 2026. (Dkt. No. 10 at 2-3.)  The Court also directed the government to file a response addressing mootness.  (Dkt. No. 12.)  The parties submitted their briefing and the Court heard argument on March 19, 2026. (Dkt. Nos. 13, 15, 16, 17.)  Following the hearing, the Court ordered the parties to submit supplemental briefing regarding whether the challenged actions constitute a final agency action under the APA.  (Dkt. No. 18.)  The supplemental briefing is now complete.  (Dkt. Nos. 19, 20, 21.)

<strong>LEGAL FRAMEWORK</strong>

Non-LPR cancellation of removal is a discretionary form of relief that permits noncitizens who are in removal proceedings to obtain lawful permanent resident status.  8 U.S.C. § 1229b(b)(1).  An individual is eligible for cancellation of removal only if he meets four requirements:

> (1) he "has been physically present in the United States for a continuous period of not less than 10 years" before he applies;
>
> (2) he "has been a person of good moral character during such period";
>
> (3) he has not been convicted of certain criminal offenses; and
>
> (4) he "establishes that removal would result in exceptional and extremely unusual hardship to [his] spouse, parent, or child," who is a U. S. citizen or lawful permanent resident.

*Wilkinson v. Garland*, 601 U.S. 209, 213 (2024) (quoting §§ 1229b(b)(1)(A)–(D)).  As relevant here, a qualifying child is defined as "an unmarried person under twenty-one years of age." *See* 8 U.S.C. § 1101(b)(1).  Section "1229b(b)(1)(D) requires a noncitizen 'seeking cancellation to establish hardship to a qualifying relative as of the time the IJ adjudicates' the application, not when it was filed."  *Aguilar Nepamuceno v. Bondi*, No. 22-700, 2025 WL 3252320, at *1 (9th Cir. Nov. 21, 2025) (quoting *Mendez-Garcia v. Lynch*, 840 F.3d 655, 664 (9th Cir. 2016)).

Congress placed a statutory limit of 4,000 on the number of cancellation applications that can be granted every year. 8 U.S.C. § 1229b(e)(1).  Under the regulations, "[w]hen grants are no longer available in a fiscal year, further decisions to grant such relief must be reserved until such time as a grant becomes available under the annual limitation in a subsequent fiscal year." 8

United States District Court
Northern District of California

C.F.R. § 1240.21(c)(1); *see also Orellana v. Bondi*, 141 F.4th 560, 562 (4th Cir. 2025) (once "the legislative cap of 4,000 grants of Cancellation per fiscal year [is] met, the IJ … reserve[s] her decision until a visa became available for Petitioner").

To "ensure uniform handling of cases subject to the statutory cap, the EOIR's Office of the Chief Immigration Judge ("OCIJ") adopted OPPM 17-04, which explains that "[w]hen the cap is about to be reached, the [OCIJ] will notify Immigration Judges that they must reserve decisions granting cancellation or suspension." *Orellana,* 141 F.4th at 564–65 (quoting OPPM 17-04: *Applications for Cancellation of Removal or Suspension of Deportation that are Subject to the Cap*, 9 Immigration Law Service 2d PSD, EOIR Memorandum 17-04 at 2).

> Section V of OPPM 17-04 provides that when an IJ concludes that Cancellation "is potentially going to be granted," she "must reserve the decision" and take certain steps including "[p]repar[ing] a draft reserved decision." OPPM 17-04 at 3–4. Section VI then explains that the IJ may draft a dictated decision within 15 working days of the hearing or draft a written decision within 60 days of the hearing. *Id*. at 4. But those draft decisions are not "released to the parties or the public," so they do not become part of the record of the case. *Id*. at 5. Instead, they are held internally on the EOIR network or with the court administrator. When EOIR determines that a visa number is available, it notifies the IJ that the decision may be issued. "Within 5 days of being notified that a number is available, the [IJ] will revise the decision, if necessary, and sign and return it to the [court administrator] for issuance." *Id*.

*Orellana*, 141 F.4th at 565.  "If the immigration judge who drafted the reserved decision is unavailable to issue that decision when a number becomes available, an Assistant Chief immigration Judge shall reassign the case … The newly-assigned Immigration Judge is not bound by the original Immigration Judge's preliminary decision."  *Id*. (quoting OPPM 17-04 § IX).

## DISCUSSION

To obtain a preliminary injunction, Plaintiff must establish (1) he is "likely to succeed on the merits," (2) he is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [his] favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "If a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in

the plaintiff's favor, and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). "Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest— merge." *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025) (citation modified).

### A.    Likelihood of Success/Serious Legal Questions

Plaintiff brings a single claim for relief under the APA, 5 U.S.C. § 706(2)(A), arguing the rescission of the age-out Expedite Policy (hereafter "Expedite Policy") is "arbitrary and capricious, an abuse of discretion, and not in accordance with law because, among other things, Defendant failed to articulate a reasonable explanation for her actions." (Complaint at ¶ 39.)

### 1.    Final Agency Action

An agency action must be "final" to be reviewable under the APA.  5 U.S.C. § 704. An agency action is final when the challenged action (1) "marks the consummation of the agency's decisionmaking process," and (2) is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (cleaned up).  According to the Complaint, the Expedite Policy was rescinded in 2025 without rulemaking and "seems to have been directed through "an EOIR Director's Memorandum, Policy Memorandum 25-02." (Dkt. No. 1 at ¶ 9) (citing EOIR Policy Memorandum 25-02, *EOIR's Core Policy Values* § VI (Jan. 27, 2025) (available at https://www.justice.gov/eoir/media/1386541/dl?inline) (last visited May 22, 2026) (stating "any operational policy related to case adjudications issued in secret between February 1, 2021, and January 21, 2025, is no longer in effect.").  Because the only evidence Plaintiff offered of either the Expedite Policy or its rescission was a declaration from immigration attorney Kevin Crabtree and anecdotal evidence of other instances pre-2025 in which immigration judges advanced cases as a qualifying relative's 21st birthday approached, the Court requested supplemental briefing regarding whether the Expedite Policy and the rescission of the policy constituted a final agency action.  (Dkt. No. 18.)

Plaintiff submitted several pieces of additional evidence with his supplemental briefing:

6

(1) a declaration from immigration attorney Alison Pennington attaching an email thread with an immigration judge regarding the rescission and documents Ms. Pennington's office received in response to a Freedom of Information Act (FOIA) regarding the Expedite Policy (Dkt. No. 21 at 4); (2) declarations from three former immigration judges attesting both to the Expedite Policy and its rescission (*Id*. at 55); (3) additional attorney declarations regarding the Expedite Policy and rescission (*Id*. at 72); and (4) an unofficial transcript of Plaintiff's January 25, 2023 individual hearing (*Id*. at 97). At this stage, these documents are sufficient to demonstrate Plaintiff seeks review of a final agency action.

First, the FOIA documents include "a PowerPoint presentation entitled "'Cancellation of Removal and Suspension of Deportation Processing' dated May 29, 2024, with five flow charts and a template IJ 42B Expedite Request." (Dkt. No. 21, Pennington Decl. at ¶ 13; *see also* Dkt. No. 21 at 13-53.) Multiple slides reference 500 of the 4,000 available yearly visa numbers being set aside for priority matters which "are defined as detainees, time-sensitive BIA remands, and expedited requests." (Dkt. No. 21 at 13, 14, 29.) The documents also discuss the process for the expedited requests stating, among other information, these expedite requests must include "[a]ny date sensitive info" and "[a]ge out date of QR, if applicable." (*Id*. at 15, 16; *see also Id*. at 47 ("RDCIJ approves Expedited Requests from the ACIJ based on humanitarian reasons or age out.").) The former immigration judges' declarations confirm the Expedite Policy was used in part for individuals whose qualifying relative was aging out. (Dkt. No. 21 at 55, Dillon Decl. at ¶¶ 4-15; Dkt. No. 21 at 61, Lien Decl. at ¶¶ 4-9; Dkt. No. 21 at 66, Chen Decl. at ¶¶ 3-8.) Further, the declarations all state that in early 2025 the immigration judges received an email from the Assistant Chief Immigration Judge that the Expedite Policy had been suspended and was not revived. (Dkt. No. 21 at 55, Dillon Decl. at ¶ 16; Dkt. No. 21 at 61, Lien Decl. at ¶ 10; Dkt. No. 21 at 66, Chen Decl. at ¶ 9.) This testimony is consistent with the February 28, 2025 email attached to the Pennington Declaration from Assistant Chief Immigration Judge Lori McCleskey stating there was "a nationwide pause" of the Expedite Policy. (Dkt. No. 21 at 8.) At this stage of the proceedings, these documents are sufficient to demonstrate both the existence of the Expedite Policy and its rescission in early 2025.

United States District Court
Northern District of California

Second, that the Expedite Policy's rescission is not memorialized in writing does not "defeat finality." *Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 100 (D.C. Cir. 2020) ("the absence of a written memorialization by the agency does not defeat finality."). "The APA's text contains no requirement that agency action be formally promulgated, or memorialized in writing." *Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, 1022 (N.D. Cal. 2025) (collecting cases). Likewise, the APA does not "require that plaintiffs prove the existence of such action through direct rather than circumstantial evidence." *Id.* (citing *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 166 (E.D.N.Y. 2018) ("[C]ourts have found a defendant agency's behavior relevant to inferring the existence of a policy."); *see also Am. Ass'n of Univ. Professors v. Trump*, 815 F. Supp. 3d 907, 967 (N.D. Cal. 2025) (concluding where "the agencies adopted a concerted playbook" and behaved consistently with that paybook "[t]he decision to proceed in that manner, though unwritten, constitutes an agency action"); *cf. Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 325 (2025) (Thomas, J., concurring) (explaining the "conventional rule of civil litigation" that "a plaintiff can proceed with direct or circumstantial evidence" (citation modified)).).

Third, the rescission is not interlocutory—the government is no longer following the Expedite Policy for those who were previously eligible for relief. *See New York v. Kennedy*, 155 F.4th 67, 76 (1st Cir. 2025) (concluding a U.S. Department of Health and Human Services statement was not tentative or interlocutory when "it was followed, just days later, by" agency conduct implementing the statement); *Presidents' All. on Higher Educ. & Immigr. v. Noem*, No. 25-CV-11109-PBS, 2026 WL 788185, at *15 (D. Mass. Mar. 20, 2026) (concluding the at-issue policy "represent[s] the conclusion of its decisionmaking on this issue" because following the policy announcement the agency "proceeded to revoke many students' visas, which it has never restored."); *Massachusetts v. Trump*, 790 F. Supp. 3d 8, 26 (D. Mass. 2025) (concluding agency's "temporary" pause was final after months had passed and where the defendants provided the court with no "reasonable timeframe for, or indeed any end on the horizon" to the pause); *Sw. Airlines Co. v. United States Dep't of Transportation*, 832 F.3d 270, 275 (D.C. Cir. 2016) ("In assessing whether a particular agency action qualifies as final for purposes of judicial review, this court and the Supreme Court have looked to the way in which the agency subsequently treats the challenged

8

United States District Court
Northern District of California

action."). The government's conduct since the Expedite Policy was "paused" belies any argument it is a temporary change in policy. (Dkt. No. No. 1 at ECF 69 (2/23/26 Immigration Judge order: "To the extent there was previously an informal practice of doing so, such informal practice no longer exists."); Dkt. No. 21 at 4, Pennington Decl. at ¶ 16 ("Since February 27, 2025, when the policy was rescinded without formal notice, I have seen multiple emails on listservs that EOIR has informed attorneys that they no longer allocate expedited numbers in cases of aging-out children."); Dkt. No. 21 at 72, Damast Decl. at ¶ 7 (same); Dkt. No. 21 at 76, Hedrick Decl. at ¶ 13 (same).)

Finally, the government's argument the policy's rescission is not one from which legal consequences flow is specious. The policy's rescission has had immediate legal consequences for those individuals, like Plaintiff, whose applications were designated reserved 42B but whose expedite requests based on a qualifying relative aging out have been denied. If the visa petitions are not expedited for these individuals and their qualifying relative ages out, they are no longer eligible for cancellation of removal. *See* 8 U.S.C. § 1229b(b)(1)(D) (stating eligibility for cancellation of removal requires "exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence"); 8 U.S.C. § 1101(b)(1) (defining "child [as] an unmarried person under twenty-one years of age").

Accordingly, on this factual record, the Expedite Policy's rescission is "final agency action" reviewable under Section 704.

### 2. Live Case or Controversy

The Court also ordered the parties to file supplemental briefs addressing whether this action is moot in light of the Immigration Judge's denial of Plaintiff's motion to advance the cancellation grant following the issuance of the TRO and Plaintiff's child having turned 21 on March 2, 2026. (Dkt. No. 10 (citing *Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002) (stating the requirement of a "live controversy" and noting "[w]here the activities sought to be enjoined already have occurred, and the appellate courts cannot undo what has already been done, the action is moot, and must be dismissed.").)

Plaintiff insists there is a live controversy because "the agency did not comply with the TRO and continues to apply the rescission in substance." (Dkt. No. 13 at 6.) He contends the Court's TRO postponed the effective date of the recission, but the IJ violated that order when he stated "There is no practice of advancing cases out of order. Respondent's application will be adjudicated when his number comes up." (*Id*.) Plaintiff also maintains his daughter has not aged-out because "the correct time-of- assessment is the point at which the IJ would have granted, but for government-caused delay and defiance of controlling judicial constraints." (*Id*.)

The government does not address this latter argument and instead argues because the Expedite Policy does not exist, there was no policy rescission for the immigration judge to set-aside, and thus, the immigration judge did everything they were supposed to do. (Dkt. No. 15.) This is neither a mootness argument nor an argument that is consistent with the record. As discussed above, Plaintiff has offered evidence sufficient to support his contention both that the Expedite Policy existed and that it was rescinded in early 2025—whether by PM 25-02 or otherwise.

Because the mootness question arose after this action was filed, the government bears the "burden to establish that [this] once-live case has become moot." *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 719 (2022). As the government's argument regarding mootness is based solely on its insistence there was no policy rescission, it has failed to meet its burden.

### 3. Statutory Limits to Judicial Review

The APA does not apply when other "statutes preclude judicial review" of the agency action in question, or when the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). The government insists 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) preclude judicial review of Plaintiff's APA claim here.

Under 8 U.S.C. § 1252(a)(5), "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter...." Further, 8 U.S.C. § 1252(b)(9), entitled "[c]onsolidation of questions for judicial review" states:

> Judicial review of all questions of law and fact, including

10

> interpretation and application of constitutional and statutory provisions, ***arising from any action taken or proceeding brought to remove an alien from the United States*** under this subchapter ***shall be available only in judicial review of a final order under this section***. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9)(emphasis added). These judicial review provisions "were designed to make perfectly clear 'that only courts of appeals—and not district courts—could review a final removal order,' that 'review of a final removal order is the only mechanism for reviewing any issue raised in a removal proceeding,' and that the statute was 'intended to preclude all district court review of any issue raised in a removal proceeding.'" *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1034 (9th Cir. 2016) (quoting H.R. Rep. No. 109–72, at 173).

In *J.E.F.M*, the plaintiffs, immigrant minors in removal proceedings, filed a civil action contending they had a constitutional and statutory right to appointed counsel in immigration proceedings. 837 F.3d at 1029. The Ninth Circuit held the district court lacked jurisdiction over the plaintiffs' claims because "§§ 1252(a)(5) and 1252(b)(9) channel review of all claims, including policies-and-practices challenges, through the PFR process whenever they 'arise from' removal proceedings. Because the children's right-to-counsel claims arise from their removal proceedings, they can only raise those claims through the PFR process." *Id*. at 1035 (quoting *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec*., 510 F.3d 1, 13 (1st Cir. 2007)). So too here. The record compels the conclusion Plaintiff's APA claim arises from his application for cancellation of removal—he challenges the rescission of the Expedite Policy which expressly only applies to individuals in removal proceedings who have filed an application for cancellation of removal and whose applications have been reserved pending issuance of a visa. Such a challenge can only be raised in a petition for review filed in the Ninth Circuit Court of Appeals.

Plaintiff's contention *J.E.F.M*. is no longer good law because it was decided before *Jennings v. Rodriguez*, 538 U.S. 281 (2018), is unpersuasive. To be sure, "*Jennings* cautioned against an 'expansive' interpretation of § 1252(b)(9) that would lead to 'absurd' results and make

certain claims 'effectively unreviewable.'" *Ibarra-Perez v. United States*, 154 F.4th 989, 1000 (9th Cir. 2025) (quoting *Jennings*, 583 U.S. at 293). But *Jennings'* caution is consistent with *J.E.F.M.*'s holding that § 1252(b)(9) does not bar claims that are "independent of or collateral to the removal process." *Ibarra-Perez*, 154 F.4th at 1000 (quoting *J.E.F.M.*, 837 F.3d at 1032).[3] That is, judicial review was—and is—available to review a collateral or independent claim that does not arise out of removal proceedings, but it is unavailable to review a claim intertwined with the removal process. *See Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) ("When a claim [] however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal, it is prohibited by section 1252(a)(5)").

        Plaintiff's attempt to recast his APA challenge as directed to a collateral "ministerial" step in processing his cancellation of removal application is likewise unpersuasive. Plaintiff appears to contend the grant of his cancellation of removal application is a fait accompli, but the evidence before the Court is to the contrary. Indeed, Plaintiff's counsel's declaration states the immigration judge has *not* made a decision on the application for cancellation of removal. (Dkt. No. 1 at ECF 78, Ezpinoza Decl. at ¶ 5 (attesting the immigration judge stated on January 23, 2023, that she "intended to grant Mr. Suarez Soto's application for non-LPR cancellation of removal but was unable to issue a decision immediately because the statutory cap…had been reached" and thus issued an "order designating the case as 'on 42b reserved decision'"). This conclusion is consistent with the immigration judge declarations offered with Plaintiff's supplemental brief: "any decision to grant non-LPR cancellation of removal would need to be reserved until a visa became available." (Dkt. No. 21 at 57, Dillon Decl. at ¶ 7; *see also* Dkt. No. 21 at 63, Lilien Decl. at ¶ 5 ("I was trained that even if I found a given respondent eligible for non-LPR COR, I was not to grant such relief at the conclusion of the evidentiary hearing" and "[i]nstead, I was instructed to close the evidentiary record and advise the parties that I would reserve the matter for a decision pending the availability of a visa number."). In other words, the grant of the visa is a necessary

---

[3] Plaintiff's reliance on *Guerrero-Lasprilla v. Barr*, 589 U.S. 221 (2020) and *Figueroa v. Mukasey*, 543 F.3d 487 (9th Cir. 2008), is puzzling because both addressed the court of appeal's jurisdiction to review questions of law and fact raised in a petition for review—undisputedly not the posture here.

predicate act to the grant of non-LPR cancellation of removal and not independent of or collateral to the removal process.[4] *See Martinez*, 704 F.3d at 622 ("Despite [Plaintiff's] efforts to characterize his complaint as asserting 'independent' claims, it is simply another attempt to obtain judicial review of his removal order and the district court lacked jurisdiction").

Challenges to the process for issuing reserved grants of cancellation of removal must be raised in a petition for review of the final removal order as in *Orellana v. Bondi*, 141 F.4th 560 (4th Cir. 2025). In *Orellana*, the petitioner filed a petition for review challenging the denial of his cancellation of removal application arguing OPPM 17-04 required reserved grants of cancellation to be issued within five days of a visa becoming available. The court rejected this argument concluding "there is nothing in the text or substance of OPPM 17-04 that indicates it is for the benefit of any individual applicant or intended to have the force of law." *Id.* at 566. "To the contrary, OPPM 17-04 sets only internal policies intended to allow for orderly 'handling [of] cases involving cancellation of removal ... that are subject to the cap.'" *Id.* (quoting OPPM 17-04 at 2); *see also Lara v. Garland*, 845 F. App'x 566, 567 (9th Cir. 2021) (finding OPPM 17-04 is an internal directive that does not have the force of law). Plaintiff's challenge to the process for handling his cancellation of removal application including issuance of the necessary visa likewise must be raised through the petition for review process.

Finally, Plaintiff's reliance on *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1 (2020), is misplaced. There, the Supreme Court considered an APA action challenging the government's rescission of the Deferred Action for Childhood Arrivals (DACA) immigration program as arbitrary and capricious and a violation of the Fifth Amendment's Due Process Clause. *Id.* at 13. The government argued the courts lacked jurisdiction to review the decision to terminate the program under 8 U.S.C. §§ 1252(b)(9) and 1252(g). *Id.* at 19. The Supreme Court concluded the plaintiffs' claims were not jurisdictionally barred because "the

---

[4] This is consistent with the language in OPPM 17-04 expressly stating when, as here, the immigration judge who issued the reserved decision is "unavailable" the "newly-assigned Immigration Judge is not bound by the original Immigration Judge's preliminary decision." OPPM 17-04, § IX.

13

United States District Court
Northern District of California

parties are not challenging any removal proceedings." *Id.* ("The rescission, which revokes a deferred action program with associated benefits, is not a decision to commence proceedings, much less to adjudicate a case or execute a removal order.") (cleaned up).  While, as here, the *Regents* plaintiffs challenged the government's rescission of an immigration policy, the *Regents* plaintiffs did so as a direct APA challenge to the policy recission; not—as Plaintiff proposes here—as a challenge to the agency's application of the policy rescission to an individual's defensive application for cancellation of removal.  Indeed, in the underlying action brought by the individual DACA recipients the district court rejected the government's argument that 1252 precluded judicial review of their APA challenge because the action had been brought "*prior* to the commencement of any removal proceedings."  *See Regents of Univ. of California v. United States Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011, 1032 (N.D. Cal. Jan. 9, 2018) (emphasis added).  Here, in contrast, Plaintiff seeks to challenge the rescission of a policy as it is being applied to his ongoing removal proceedings.

Because Plaintiff's challenge arises from an "action taken or proceeding brought to remove [him] from the United States," it falls within Section 1252(b)(9)'s jurisdiction-stripping provision and must be brought through the petition for review process.  *See, e.g.*, *Gomez v. McAleenan*, No. 19-CV-04199-JCS, 2019 WL 5722619, at *4 (N.D. Cal. Nov. 5, 2019) (dismissing APA action challenging the government's refusal to issue a visa number following a reserved decision on plaintiff's cancellation application for lack of jurisdiction because the plaintiff's "challenge to the policy that governs the issuance of visas under 8 U.S.C. § 1229b(b) must be brought in the Court of Appeals.").

\*\*\*

Because this Court lacks jurisdiction over this APA action, Plaintiff cannot demonstrate a likelihood of success or a serious questions as to the merits of his APA challenge; the Court thus does not address the remaining *Winter* factors. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) ("the court need not consider the other factors" if no likelihood of success is shown).  The motion for a preliminary injunction is denied.

14

## CONCLUSION

For the reasons stated above, the preliminary injunction is DENIED and the TRO is VACATED. The parties shall meet and confer and within 14 days file a joint statement proposing a schedule for disposition of the action or stipulating that the reasoning of this Order warrants dismissing the action and entering judgment.

This Order disposes of Docket No. 7.

**IT IS SO ORDERED.**

Dated: May 22, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

15